Commonwealth, Appellant, *v.* Fattizzo.

Argued September 12, 1972. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, SPAULDING, CERCONE, and PACKEL, JJ.

*Martin H. Belsky*, Assistant District Attorney, with him *Milton M. Stein*, Assistant District Attorney, *James D. Crawford*, Deputy District Attorney, *Richard A. Sprague*, First Assistant District Attorney, and *Arlen Specter*, District Attorney, for Commonwealth, appellant.

*Jonathan Miller*, Assistant Defender, with him *Vincent J. Ziccardi*, Defender, for appellee.

OPINION BY JACOBS, J., December 11, 1972:

The issue presented by this case is whether the immunity conferred on a federal grand jury witness under 18 U.S.C. §2514[1] protects him from further proceed-

---

[1] "Whenever in the judgment of a United States attorney the testimony of any witness, or the production of books, papers, or other evidence by any witness, in any case or proceeding before any grand jury or court of the United States involving any violation of this chapter [dealing with wiretapping and interception of oral communications] or any of the offenses enumerated in section 2516 [referring to specified offenses the investigation of which may justify a federal or state wiretap or interception of oral communication], or any conspiracy to violate this chapter or any of the offenses

ings under a state gambling prosecution in which he had been indicted prior to his federal testimony, the witness having replied affirmatively in his federal testimony to a question as to whether he was self-employed in the numbers business at the time of his state arrest. We agree with the lower court that the statute protects him from further proceedings in the state prosecution.

On January 29, 1970, the defendant, Alfred Fattizzo, was arrested by Pennsylvania authorities as the result of alleged numbers activities. He was indicted on February 18, 1970, for being a common gambler and for setting up and maintaining an illegal lottery. Prior to trial on these charges, defendant appeared before a

---

enumerated in section 2516 is necessary to the public interest, such United States attorney, upon the approval of the Attorney General, shall make application to the court that the witness shall be instructed to testify or produce evidence subject to the provisions of this section, and upon order of the court such witness shall not be excused from testifying or from producing books, papers, or other evidence on the ground that the testimony or evidence required of him may tend to incriminate him or subject him to a penalty or forfeiture. *No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is compelled, after having claimed his privilege against self-incrimination, to testify or produce evidence, nor shall testimony so compelled be used as evidence in any criminal proceeding (except in a proceeding described in the next sentence) against him in any court.* No witness shall be exempt under this section from prosecution for perjury or contempt committed while giving testimony or producing evidence under compulsion as provided in this section." 18 U.S.C. §2514 (Supp. V, 1970) (emphasis added), *repealed,* Act of October 15, 1970, Pub. L. No. 91-452, Tit. II, §227(a), 84 Stat. 930. The repeal was to take effect 4 years following the 60th day after enactment of the repealer provision (*id.,* §§227(a), 260, 84 Stat. 930, 931-32) and was not to affect persons entitled to immunity prior to enactment of the repealer provision. *Id.,* §260, 84 Stat. 932. The defendant, whose testimony was compelled, and occurred, on June 22, 1970, falls into the category of persons unaffected by the repeal.

federal grand jury in Philadelphia investigating gambling and invoked his privilege against compulsory self-incrimination. Judge John B. HANNUM, of the United States District Court for the Eastern District of Pennsylvania, on June 22, 1970, issued an order compelling his testimony, pursuant to 18 U.S.C. §2514; the language of the order, with regard to the witness' immunity from prosecution and use of his testimony, largely followed that of the statute.[2] It read: "[The witness] shall not, however, be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he is asked and compelled to testify or produce evidence under this Order, nor shall his testimony so compelled be used as evidence in any criminal proceeding Federal or State, against him in any court except in a prosecution for perjury or contempt committed by him while giving testimony or producing evidence under compulsion of this Order."

As a result of the order, defendant testified. He was questioned concerning his numbers activities and his relationship with and knowledge of various people, including one Pasquale Monzelli. On a number of occasions, the questions concerned defendant's criminal activity occurring a few months prior to his arrest on state charges. At one point, he was questioned directly about his activity at the time of his arrest: "Q. What position are you in now? A. I am before a Federal Grand Jury, and I have a case pending. Q. When did you get arrested on that case? A. January 29th, I believe, or 27th of 1970. Q. And you were working for yourself then? A. Yes." It is clear from an examination of previous questions and answers that defendant's statement that he was working for himself at the time of his arrest referred to his status in the numbers busi-

---

[2] *See* note 1, supra.

ness; prior testimony elicited from him frequently concerned whether he was self-employed or working for another in numbers operations.

Following his testimony, on August 19, 1970, defendant moved for dismissal of the state indictments pending against him. On November 5, 1970, the motion was granted by Judge Emanuel W. BELOFF of the court below. This appeal by the Commonwealth followed.

A resolution of the issue presented by this case requires a resolution of a number of sub-issues. In the order in which they will be discussed, they are: (1) What type of immunity did Congress intend to legislate under 18 U.S.C. §2514? (2) Did Congress intend the immunity to be effective in state courts? (3) Should this Court's interpretation of the statute, in either of these respects, be affected by a recent case[3] in which the United States Supreme Court held a limited form of immunity to be constitutionally sufficient for the compulsion of testimony? (4) To what type of statements by a witness was the immunity intended to apply? (5) Did Congress intend the immunity to be effective in a case in which an indictment had been procured prior to the occurrence of immunity? And (6) does Congress have the constitutional power to foreclose a state criminal proceeding in order to obtain testimony concerning gambling, when a lesser degree of immunity would have been constitutionally sufficient to compel the testimony?

With regard to the type of immunity legislated under 18 U.S.C. §2514, it is clear that both "transactional" and "use" immunity are contemplated—that is, both immunization against prosecution for an offense, or transaction, to which compelled testimony relates[4]

---

[3] *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653 (1972).

[4] "No . . . witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or

and immunization against use of compelled testimony in criminal proceedings against the witness.[5] Federal immunity statutes incorporating the broad type of protection known as transactional immunity were passed in response to a declaration in *Counselman v. Hitchcock*, 142 U.S. 547, 585 (1892), that "no statute which leaves the party or witness subject to prosecution after he answers the criminating question put to him, can have the effect of supplanting the privilege conferred by the Constitution of the United States." *See Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653 (1972); *Katz v. United States*, 389 U.S. 347 (1967); *Brown v. Walker*, 161 U.S. 591 (1896). The expansive language of *Counselman* must serve as the measure of the type of immunity Congress intended in 18 U.S.C. §2514.

As to whether immunity from prosecution was intended to apply in state criminal proceedings, an examination of legislative history and case law indicates that it was. The Senate Report on the Omnibus Crime Control and Safe Streets Act of 1968,[6] of which 18 U.S.C. §2514 is a part, states that the immunity provision was "patterned after provisions in other laws which have been upheld and found effective. It [was]

---

thing concerning which he is compelled . . . to testify or produce evidence. . . ." 18 U.S.C. §2514 (Supp. V, 1970).

[5] "[N]or shall testimony so compelled be used as evidence in any criminal proceeding [with certain exceptions] against him in any court." *Id.*

Transactional and use immunity are discussed in *Kastigar v. United States*, 406 U.S. 441, 92 S. Ct. 1653 (1972); *Riccobene Appeal*, 439 Pa. 404, 268 A.2d 104 (1970); and 8 J. Wigmore, Evidence §2281, at 495 n.11 (McNaughton rev. 1961). Wigmore terms the transactional type of protection "immunity-from-prosecution." *Id.*

[6] Report of the Senate Judiciary Committee on the Omnibus Crime Control and Safe Streets Act of 1968, S. Rep. No. 1097, 90th Cong., 2d Sess., *reprinted in* 1968 U.S. Code Cong. and Admin. News 2112 *et seq.*

intended to reflect existing law . . . ."[7]   The two cases cited as representative of existing law, *Reina v. United States,* 364 U.S. 507 (1960), and *Ullmann v. United States,* 350 U.S. 422 (1956), both held that identically worded immunity provisions[8] were designed to foreclose state prosecutions.   Furthermore, the existence of such a design in 18 U.S.C. §2514 would be inferred even if it had not been expressed.   "Where the legislature, in a later statute, uses the same language as used in a prior statute which has been construed by the courts, there is a presumption that the language thus repeated is to be interpreted in the same manner such language had been previously interpreted when the court passed on the earlier statute [citations omitted]." *Commonwealth v. Sitkin's Junk Co.,* 412 Pa. 132, 137, 194 A.2d 199, 202 (1963).   *See also Reina v. United States,* supra.

The assertion by the Commonwealth that an application of the statute's transactional immunity section to the states would render its use immunity section superfluous is not convincing.   It rests upon the premise that any protection afforded by use immunity would be included within transactional immunity; since both immunities must have had a purpose, it is argued that use immunity was intended to apply to the states, transactional immunity to the United States.   But the premise is faulty—transactional immunity does not pro-

---

[7] *Id.,* 1968 U. S. Code, Cong. and Admin. News at 2184.

[8] The statutes are identically worded with respect to the language providing for immunity, not the language related to such matters as the offenses to which they pertain.   In *Reina,* the statute containing an immunity provision was 18 U.S.C. §1406 (1964), *repealed,* Act of October 15, 1970, Pub. L. No. 91-452, Tit. II, §224(a), 84 Stat. 929.   In *Ullmann,* the statute was 18 U.S.C. §3486 (1964), *repealed,* Act of October 15, 1970, Pub. L. No. 91-452, Tit. II, §228 (a), 84 Stat. 930.

vide every protection that use immunity does.[9] And the plain words of 18 U.S.C. §2514 do not support the distinction for which the Commonwealth contends. *See In re Ullman,* 128 F. Supp. 617 (S.D.N.Y.), *aff'd,* 221 F.2d 760 (2d Cir. 1955), *aff'd,* 350 U.S. 422 (1956) (language of immunity provision identical to that of 18 U.S.C. §2514 held not susceptible of interpretation restricting transactional immunity to federal prosecutions).[10]

The question of whether the recent decision in *Kastigar v. United States,* 406 U.S. 441, 92 S. Ct. 1653 (1972), should affect the foregoing conclusions regarding §2514 is a matter of statutory construction. *Kastigar* held that a form of use immunity, which included a prohibition on the use of evidence derived from a witness' testimony, was sufficiently protective of one's privilege against self-incrimination to justify compelling his testimony. The declaration in *Counselman v. Hitchcock,* supra, indicating a constitutional requisite of transactional immunity was not followed.

---

[9] As the United States Court of Appeals for the Second Circuit noted in *United States v. Pappadio,* "[the transactional section of an immunity statute] creates a defense to prosecution for acts as to which [a witness] is compelled to testify, and [the use section] bars the use of such testimony against him in a prosecution for any other acts.

". . . [E]ven if [a witness'] answers are not such as to entitle him to dismissal of the indictment [under transactional immunity], he is protected against the answers being used against him in any criminal proceeding [under use immunity]. . . ." 346 F.2d 5, 8 (2d Cir. 1965), *vacated on other grounds,* 384 U.S. 364 (1966).

[10] *See also In re Parker,* in which the United States Court of Appeals for the Tenth Circuit stated without further discussion that 18 U.S.C. §2514 and an order pursuant to it in language identical in material respects to that of the present order effected immunity from prosecution in both state and federal proceedings. 411 F.2d 1067 (10th Cir. 1969), *vacated on other grounds,* 397 U.S. 96 (1970).

However, it would not be wise for a court to reinterpret a statute each time a decision occurs which might have affected the legislature's enactment had it been foreseen. As the Supreme Court noted in interpreting a different immunity provision, "a court decision subsequent to an act's passage does not usually alter its original meaning." *Adams v. Maryland,* 347 U.S. 179, 182 (1954) (frustration of statute's purpose by court decision held no ground for limiting application of immunity to federal prosecutions or to persons having specifically claimed right to remain silent). Furthermore, any reinterpretation of §2514 so as to make only its use immunity provision applicable to state prosecutions would raise serious doubts as to its constitutional validity, inasmuch as the provision contains no express prohibition on the use of evidence *derived* from compelled testimony. *See Kastigar v. United States,* 406 U.S. 441, 92 S. Ct. 1653 (1972). A statute should be construed, if possible, to avoid such doubts. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1 (1937) ; *ICC v. Oregon-Washington R.R. & Navigation Co.,* 288 U.S. 14 (1933) ; *United States v. Shreveport Grain & Elevator Co.,* 287 U.S. 77 (1932).

With regard to the type of statements to which the immunity against prosecution of 18 U.S.C. §2514 relates, three requisites are evident. First, the statement in question must have been "compelled."[11] Dean Wigmore suggests that compulsion, as that term pertains to immunity statutes, is indicated by a concurrence of three events: a use of the government's power to conduct a testimonial inquiry, a claim of privilege by a witness, and a ruling by a judge overriding the claim.

---

[11] 18 U.S.C. §2514 (Supp. V, 1970) precludes prosecution or subjection to penalty or forfeiture "for or on account of any transaction, matter or thing concerning which [the witness] is *compelled* to testify." (Emphasis added.)

8 J. Wigmore, Evidence §2282, at 514-19 (McNaughton rev. 1961). Each event occurred in the case at bar. The Commonwealth's assertion that defendant's admission of numbers activity at the time of his state arrest was not the result of questioning, but was volunteered, is not supported by the record. The statement was made in direct response to a question.

Second, the statement in question must have borne " 'a substantial relation to the subject matter of the immunity provision.' " *In re Vericker,* 446 F.2d 244, 247 (2d Cir. 1971), *quoting United States v. Harris,* 334 F.2d 460, 462 (2d Cir. 1964) (reversed on other grounds, 382 U.S. 162 (1965) ). Among the offenses constituting the subject matter of 18 U.S.C. §2514 at the time of defendant's testimony was that of traveling interstate or using interstate facilities for the purpose of furthering or engaging in a gambling business.[12] Defendant's admission of numbers activity at the time of his state arrest undoubtedly bore a substantial relation to the subject matter of the immunity provision.

Third, it is a requisite for immunity that the statement in question concern the offense for which the witness is being prosecuted.[13] An admission of guilt certainly concerns the offense.

As to whether the transactional immunity accorded under 18 U.S.C. §2514 was intended to be effective in prosecutions in which an indictment had been procured prior to the existence of immunity, an examination of the plain language of the statute, of its purpose, and of case law compels a conclusion that it was. The stat-

---

[12] 18 U.S.C. §1952 (1964), *as amended,* 18 U.S.C. §1952 (Supp. V, 1970), *incorporated by reference into* 18 U.S.C. §2516(1) (c), *the latter being incorporated by reference into* 18 U.S.C. §2514.

[13] "No such witness shall be prosecuted or subjected to any penalty or forfeiture for or on account of any transaction, matter or thing *concerning* which he is compelled . . . to testify . . . ." 18 U.S.C. §2514 (Supp. V, 1970) (emphasis added).

ute provides that no compelled witness "shall be prosecuted or subjected to any penalty or forfeiture . . . ."[14] for an offense as to which he testified. The provision gives no indication that "shall be prosecuted" was intended to be equivalent to "shall be indicted"[15] or "shall have criminal suit instituted against him."[16] In addition, to restrict the statute's application to cases in which no arrest or indictment had occurred would be inconsistent with its proscription against imposition of "any penalty or forfeiture."

Furthermore, the purpose of immunity statutes, like 18 U.S.C. §2514, is to compel testimony by eliminating the risks which the Fifth Amendment, in the legislature's view, was intended to protect against. *See* 1 C. Antieau, Modern Constitutional Law §2:35 (1969) ; 8 J. Wigmore, Evidence §2281 (McNaughton rev. 1961). It is clear that the risks against which the Fifth Amendment was intended to protect include those to which a person already under indictment would be subjected by compulsory testimony. *United States v. Smith,* 342 F.2d 525 (4th Cir.), *cert. denied,* 381 U.S. 913 (1965).

Finally, the United States Court of Appeals for the Second Circuit has noted that, with regard to an iden-

---

[14] 18 U.S.C. §2514 (Supp. V, 1970).

[15] The Pennsylvania Supreme Court has noted that as a general rule the word "prosecution" has a larger signification than "indictment." *Commonwealth v. Haas,* 57 Pa. 443 (1868). The term "prosecution" derives from the Latin, *prosequi*—to pursue. Webster's Third New International Dictionary 1820 (1961). An indictment is at most one stage of the pursuit. *Commonwealth v. O'Gorman,* 146 Pa. Superior Ct. 553, 554, 22 A.2d 596, 597 (1941) ("an indictment . . . is a step in a prosecution . . . ."). *See State v. Bowles,* 70 Kan. 821, 79 P. 726 (1905) ; *State v. Williams,* 192 La. 713, 189 So. 112 (1939) ; *Sigmon v. Commonwealth,* 200 Va. 258, 105 S.E.2d 171 (1958).

[16] The institution of criminal suit is but one stage of a prosecution. *See State v. Bowles,* 70 Kan. 821, 79 P. 726 (1905).

tical immunity provision, the fact that an indictment has been obtained against a witness does not preclude application of immunity in the case. *United States v. Pappadio*, 346 F.2d 5 (2d Cir. 1965), *vacated on other grounds,* 384 U.S. 364 (1966). The cases of *Reina v. United States,* 364 U.S. 507 (1960), and *Katz v. United States,* 389 U.S. 347 (1967), cited by the Commonwealth, hold only that immunity is not available in a case in which a conviction had been obtained and a sentence imposed prior to the issuing of the order compelling testimony. They do not hold that immunity is not available in a case in which a trial is still in the future.

It remains necessary to determine whether Congress has the constitutional power to foreclose a state criminal proceeding in order to obtain testimony concerning gambling, when a lesser degree of immunity would have been constitutionally sufficient to compel the testimony. An examination of United States Supreme Court decisions dealing with the constitutionality of immunity statutes convinces us that Congress did not exceed its authority.

The power of the federal legislature to grant transactional immunity in state prosecutions has traditionally been upheld. In *Brown v. Walker,* 161 U.S. 591 (1896), the Court relied upon the Supremacy Clause[17] to sustain a prohibition on state prosecutions under an immunity statute passed pursuant to Congress' power to regulate interstate commerce. Significantly, the

---

[17] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI.

Court stated that the degree of protection which the statute appeared to provide was not constitutionally required. *Brown v. Walker, supra,* at 608.

In *Ullmann v. United States,* 350 U.S. 422 (1956), it was held that an immunity statute which was designed to foster national defense and which contained a prohibition on state prosecutions was constitutional. Relying upon the Necessary and Proper Clause,[18] the Court noted that the statute "reflect[ed] a congressional policy to increase the possibility of more complete and open disclosure by removal of fear of state prosecution."[19]

In *Reina v. United States,* 364 U.S. 507 (1960), the Court, referring to both the Supremacy Clause and the Necessary and Proper Clause, upheld the proscription on state prosecutions of an immunity statute which was designed to secure information concerning federal narcotics violations. The Court noted: "Even if the grant of [both federal and state immunity] were viewed as not absolutely necessary to the execution of the congressional design, '[T]o undertake here to inquire into the degree of . . . necessity, would be to pass the line which circumscribes the judicial department, and to tread on legislative ground.'" *Id.* at 512, *quoting M'Culloch v. Maryland,* 17 U.S. (4 Wheat.) 316; 423 (1819).

To the extent that 18 U.S.C. §2514 applies to investigations of interstate gambling activity, it is based upon Congress' power to regulate interstate commerce. In view of the authority cited above, this Court would

---

[18] "The Congress shall have power . . . [t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, §8.

[19] *Ullmann v. United States,* 350 U.S. 422, 436 (1956).

not be justified in holding the statute's prohibition on the present Pennsylvania prosecution unconstitutional.

The order of the lower court dismissing the indictments on Bills Nos. 907 and 908, February Sessions, 1970, is affirmed.