Gary Thomas ROWE, Plaintiff,

v.

Carl GRIFFIN, Etc.; and Hon. Jesse O.
Bryan, Etc., Defendants.

Civ. A. No. 80–0255–N.

United States District Court,
M. D. Alabama, N. D.

Oct. 2, 1980.

J. Paul Lowery, Montgomery, Ala., and Clifford W. Cleveland, Prattville, Ala., for plaintiff.

John A. Taber, and John S. Andrews, Greenville, Ala., for defendants.

## MEMORANDUM OPINION

VARNER, Chief Judge.

This cause is submitted for final judgment on the pleadings and evidence submitted in open court. Plaintiff, Gary Thomas Rowe, sues for his redress of grievances, damages and a permanent injunction against his prosecution by Defendants, officials of Lowndes County, Alabama, and the State of Alabama, for the murder of one Viola Gregg Liuzzo on the night of March 25, 1965, or the early morning hours of the following day in Lowndes County, Alabama. (Defendants James and Graddick were dismissed in open Court on motions for directed verdicts). This Court has jurisdiction of this cause under 28 U.S.C. § 1343 to grant relief pursuant to 42 U.S.C. § 1983.

At first blush, this case appears to be a veiled attempt to pursue a remedy available as a writ of habeas corpus only after State remedies have been exhausted or an attempt to enjoin a State court prosecution of a State criminal case as ordinarily proscribed by the Supreme Court under the

teachings of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669. These possibilities have not been overlooked by defense counsel and have been thoroughly explored in Defendants' excellent brief which this Court has found most helpful.

Under the unusual circumstances, this Court finds that, in spite of these usual obstacles to federal court jurisdiction in somewhat similar cases, the Plaintiff is entitled to have the criminal prosecution against him enjoined. Upon consideration of the evidence in this case, the Court is of the opinion and finds from the preponderance of the evidence in this case the following facts.

During the several–day continuance of the Selma March[1] on or about March 25, 1965, Plaintiff, an employee of the Federal Bureau of Investigation (FBI), paid to infiltrate and report on the activities of the Ku Klux Klan (KKK) since 1959, reported to one of his contact FBI agents in Birmingham that something big—he knew not what—was to happen the next night; that he was to be a part thereof; and that he would report back the next day. On the following day, Rowe reported to the FBI that he had been one of four Klansmen who overtook and murdered the two occupants[2] of a car apparently aiding participants in the Selma March—a white woman and a black man—and that they would read of it in the papers that day. Rowe identified his associates as Klansmen Collie Leroy Wilkins, Eugene Thomas, and another Klansman who has died since the original prosecution began. Rowe guided agents to the scene of the crime, aided them in locating spent cartridges used in the shooting, and accurately located the defendants in the case.

Along with three other defendants, Rowe was arrested by State of Alabama agents and charged with the murder. State officials, knowing of Rowe's participation as an

---

1. A peaceful demonstration march from Selma to Montgomery, Alabama, by civil rights sympathizers from many parts of the nation to protest treatment of blacks in parts of the South.

2. Actually, only Mrs. Liuzzo was killed, and the black male escaped serious injury.

undercover agent, felt that Rowe's and the State's interest would best be served by Rowe's appearing to be one of those charged with the offense. Rowe was, therefore, treated as a defendant until the hearing before the Grand Jury when he was given assurances of immunity[3], and the Grand Jury indicted the other three Klansmen based almost entirely on Rowe's testimony and some corroborating evidence. Rowe then testified in two murder trials against the three Klansmen. The first murder trial resulted in a mistrial and the second in an acquittal. Thereafter, Rowe testified against the other three Klansmen before a Federal Grand Jury and in this Court (Hon. Frank M. Johnson, Jr.), and the three other defendants were indicted and convicted for violating Mrs. Liuzzo's civil rights.

After or during these trials, the FBI, fearing reprisals against Rowe, aided Rowe in establishing a home, a new job and a new identity in another State. No attempt was made to prosecute Rowe (except for the facade of his original arrest and processing) until 1978. Rowe was indicted in Lowndes County, Alabama, based upon the testimony of the two then–surviving Klansmen, who, through Rowe's agency, had been convicted and sentenced in the civil rights case, and upon the testimony of two persons who had for a number of years been police officers of the City of Birmingham and who testified that Rowe told them on the day after the murder that he had killed the woman. Rowe testified that those officers were known KKK sympathizers. The testimony of those officers is incredible in view of their silence during the original trials and the many years thereafter prior to Rowe's indictment. Additionally, although they agree that Rowe made the same general admission to both jointly, one says that

Rowe stated, "I killed a woman", while the other quotes Rowe as saying graphically, "I had to burn a whore". The testimony of the two surviving Klansmen is even less credible in view of their silence thereon, not only during the trial but for the many years thereafter until 1978. However, it is not this Court's prerogative to weigh the testimony of those witnesses, as Rowe's innocence is not material herein.

Irrespective of what those witnesses have said, it is undenied that Rowe voluntarily appeared before the FBI, the Lowndes County Grand Jury, the Federal Grand Jury, the Lowndes County Circuit Court, and the United States District Court for the Middle District of Alabama; that in each of those tribunals he admitted his participation in the events culminating in the murder and violation of the civil rights of Mrs. Liuzzo; that he could have been indicted and prosecuted on his own admissions; that he was not informed of his rights not to testify against himself; that he was told something of his immunity because of his testifying; and that for many years he was not prosecuted. This Court finds that both State and federal prosecutors assured Rowe of his immunity based upon his testifying in good faith against his co–defendants and that Rowe did testify against his co–defendants based upon a prosecutorially–induced belief that he would and could not be prosecuted for the offenses about which he testified. That immunity is limited to a use immunity, and this Court finds that the only substantial evidence available against Rowe is derived from use of his statements to the FBI and to the Birmingham police— preliminarily[4] to his testifying against the Klansmen in their criminal trials. Had Rowe not testified against his KKK co–defendants, they obviously would never have been located to testify against him.

3. Rowe says he was verbally assured by the Attorney General of the State of Alabama and the First Assistant Attorney General (the officer actually prosecuting the case) that he would never be prosecuted for the murder. The Assistant now confirms Rowe's version, while the Attorney General says that he told Rowe that he would not prosecute Rowe during his term.

4. Immunity to use of testimony during trial would be of no consequence if one could be prosecuted based on statements made out of court to officials in preliminary negotiations proposing immunity. Had Rowe not made the statements to the officers, no evidence of the identity of the murderers would have surfaced.

Rowe insists that his trial for murder at this late hour would (1) deprive him of due process of law because, since the original trials, or one or more of them, valuable evidence (the ballistics tests and the testimony of the deceased eyewitness Klansman) have become unavailable to him and/or because the prosecution, relying entirely upon the testimony of persons who have long secreted evidence in bad faith, must necessarily be considered to be proceeding in bad faith; and (2) that his prosecution, occurring some 15 years after his confession and his arrest, violates his constitutionally–protected rights to a speedy trial.

For the reasons set out in the Temporary Restraining Order filed in this cause on June 13, 1980, in the light of the matters discussed herein, this Court is of the opinion that the writ of permanent injunction should issue to enjoin prosecution of the Plaintiff for the murder of Viola Gregg Liuzzo.

The principles enunciated in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427, by the Supreme Court of the United States are applicable to the present situation. In that case, it was pointed out that:

"The disposition of criminal charges by agreement between the prosecutor and the accused, sometimes loosely called 'plea bargaining,' is an essential component of the administration of justice. Properly administered, it is to be encouraged. (at p. 260, 92 S.Ct. at p. 498)

"It is now clear, for example, that the accused pleading guilty must be counseled, absent a waiver. *Moore v. Michigan*, 355 U.S. 155 [78 S.Ct. 191, 2 L.Ed.2d 167] (1957)." (at p. 261, 92 S.Ct. at p. 498)

"This phase (plea bargaining) of the process of criminal justice, and the adjudicative element inherent in accepting a plea of guilty, must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." (at p. 262, 92 S.Ct. at p. 499)

While the *Santobello* Court was referring to the rights of an admitted criminal for protection against misuse of self–incriminating statements made under guise of a prosecutorial grant of partial immunity in order to encourage testimony by one defendant against another, the principles enunciated thereby would be even more justly applicable to protect an investigative agent placed in a compromising situation because of his undercover work.

Plaintiff Rowe made statements adverse to his own interests on the assumption that he would not be prosecuted because of an obviously intended prosecutorial immunity. The evidence indicates that Rowe was either an informing co–defendant or an undercover agent for the FBI. Rowe insists that he was given immunity from prosecution for the murder of Mrs. Liuzzo. Having admitted in open court that he was present in the car apparently lending aid and support to the persons who actually pulled the trigger of the gun which killed Mrs. Liuzzo, having testified against her alleged murderers in State court and against those who violated her constitutional civil rights in federal court, and having been taken by the FBI to another location where the FBI aided Rowe in setting up a new identification secret from persons who might be expected to harm him because of his testimony in the three cases, Rowe's conclusion that he had been granted official immunity is well justified.

However, it is clear that Rowe was not granted official statutory immunity from such prosecution either by the State of Alabama or by the United States Government. At the times pertinent to this proceeding, Alabama had no such statute, and the United States Attorney, recognizing Rowe as a federal agent, visualized no occasion for invoking the federal protection. If Rowe was granted immunity by either the federal or the State government, the doc-

trine of reciprocal immunity would protect him from prosecution by both prosecutorial branches. *Murphy v. Water Front Commission*, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed.2d 678; *Commonwealth v. Fattizzo*, 223 Pa.Super. 378, 299 A.2d 22.

■ Absent statutorily–authorized immunity, we turn to the question of whether the doctrine of equitable immunity may clothe Rowe with protection under the circumstances of this case. That doctrine, though distinguished and criticised by lesser courts, has been recognized by the United States Supreme Court in the Whiskey Cases, *United States v. Ford, et al*, 99 U.S. 594, at 595, 25 L.Ed. 399, wherein the Court stated the following:

> "Accomplices in guilt, not previously convicted of an infamous crime, when separately tried are competent witnesses for or against each other; and the universal usage is that such a party, if called and examined by the public prosecutor on the trial of his associates in guilt, will not be prosecuted for the same offense, providing it appears he acted in good faith and that he testified fully and fairly." [5]

The Supreme Court in the Whiskey Cases indicated that the proper method for effecting judicial protection of prosecutorial immunity was that the court would enter an injunction or stay pending proceedings against the defendant in order to give the prisoner time to apply to the executive for the purpose of an official pardon or amnesty. This part of the reasoning of the Supreme Court is hardly applicable in a situation where the petitioner seeking to invoke his immunity is not, because of lack of criminal intent, guilty of the crime itself and, therefore, is in no position to seek a pardon therefrom. The pardoning process contemplates guilt and forgiveness, and one pardoned of a crime nonetheless feels the stigma of guilt. Rowe, on official duties as an undercover agent for the FBI, was unknowingly thrust into the position of participation in the murder of Mrs. Liuzzo. It, therefore, appears to this Court that the part of the Whiskey Cases referring to executive clemency would create a stigma on Rowe unwarranted by the circumstances. Executive clemency, therefore, being inappropriate, is insufficient to afford Rowe full protection.

Most persons, who have sought to invoke equitable immunity recognized in the Whiskey Cases, have for one reason or another been denied the same because of a want of equity in their defenses.[6] See, *United States v. Weiss* (5 CCA 1979) 599 F.2d 730; *United States v. Calimano*, (5 Cir.) 576 F.2d 637.

In *United States v. Donahey*, 529 F.2d 831 (5 Cir. 1976), the Court recognized that the defendant, "as evidenced by the Plea Bargaining Agreement, * * * was subject to prosecution on the matters to which she was testifying before the grand jury," and, therefore, was not entitled to equitable immunity. In the case of *United States v. Beasley*, 550 F.2d 261 (1977), the United States Court of Appeals for the Fifth Circuit recognized the possibility, but denied, that the doctrine of equitable immunity would require the Government to grant immunity and place an otherwise charged accomplice on the stand to testify (at page 268). Those cases, however, show that, in a proper case, equitable immunity is available to protect Government witnesses.

This Court has been impressed by the excellent briefs filed by attorneys representing various officials of the State of Alabama. They point out, citing *United States v. Marion*, 404 U.S. 307, at 322–325, 92 S.Ct. 455, at 465, 30 L.Ed.2d 468 and the weight of authority, that preaccusation delays are not proscribed by the speedy trial provisions of the United States Constitution. However, the State attorneys, with admirable candor, point out the language in *Marion* that:

**5.** That protection, available even to a criminal accomplice, would be available to an undercover agent who, like Rowe, because of unfortunate circumstances, was placed in an incriminatory position because of his undercover activities.

**6.** The equities, however, are clearly in favor of Rowe in this case.

"[T]he due process clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre–indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused. Cf. *Brady v. Maryland*, 373 U.S. 83 [83 S.Ct. 1194, 10 L.Ed.2d 215], * * *; *Napue v. Illinois*, 360 U.S. 264 [79 S.Ct. 1173, 3 L.Ed.2d 1217] * * *." At page 324, 92 S.Ct. at page 465.

The prosecution also candidly points that it is incumbent upon the prosecuting government to show that it did not use any immunized testimony as an investigatory lead or to focus investigation upon a person. Citing, *Kastigar v. United States*, 406 U.S. 441 at 460, 92 S.Ct. 1653, at 1664, 32 L.Ed.2d 212. It must be remembered that the only witness leading to discovery of the identity of the persons convicted of violating Mrs. Liuzzo's constitutional rights and charged with her murder was Gary Thomas Rowe.[7] It is obvious that neither the murder case nor the civil rights case would ever have been presented to any grand jury had it not been for the testimony of Gary Thomas Rowe. Rowe's statements to the FBI and possibly to Birmingham police officers preliminarily to his testifying were "immunized" material, and they focused the investigation upon Rowe in violation of the *Kastigar* proscription.

The Seventh Circuit Court of Appeals in *United States v. Kuehn*, 562 F.2d 427, declined to give transactional immunity to Kuehn for matters about which he testified because there was sufficient independent evidence to insure that none of the testimony given by the immunized witness was used against him. However, in the case at bar, the prosecuting government is at a loss to show that it would ever have developed any investigatory lead had Rowe not reported his activities to the officers. While

the motive of his report to the Birmingham police may have been to protect his cover or may have been to insure that he would be considered an informer rather than a defendant insofar as the police were concerned, the use of the information assures that the prosecuting government cannot show that "it did not use any immunized testimony as an investigatory lead or to focus investigation upon a person," within the prohibitions of *Kastigar*, supra, 406 U.S. at 460, 92 S.Ct. at 1664.

The State attorneys further insist that Rowe will not be irreparably injured if extradited to be tried on the indictment. *Pierson v. Ray*, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288, shows that there can be no compensation in damages for the acts of the State in prosecuting this matter. Such damages as Rowe has already incurred and will incur by further prosecution of this matter cannot be restored to him. Rowe acted as an informer to the FBI. Rowe reported an unjustified murder and testified before State and federal grand juries and before State and federal trial courts. The federal government, acting through the FBI, saw fit to aid Rowe in establishing a new identity, a new home and a new job in another State with the contemplation that he would be beyond the reach of enemies incurred during the matters here in question. As a result of the current prosecution in Lowndes County, Rowe has lost that secret identity; he has lost that job; and he may yet be available for such reprisals as his enemies may determine to invoke. Rowe has been and is being irreparably injured by those seeking to avenge their own prosecution upon information and testimony by Rowe.

■■ Rowe's situation falls clearly within the "extraordinary circumstances" mentioned in *Kolski v. Watkins*, 544 F.2d 762, 766, which justify, in the view of this Court, federal court interference in a State–pend-

---

7. After returning from the scene of the crime, Rowe reported his association with the murder immediately to his FBI contacts. He may also have reported to the two Klan–related Birmingham police officers who testified against him in this Court. If Rowe did tell them of the murder, Rowe knew that they were at least KKK sympathizers, and he obviously did so for the purpose of protecting his undercover identity and continuing his contacts with the KKK.

ing criminal trial. That Court stated the following:

"First, petitioner has not shown that he will suffer irreparable injury by having to try this case in the Florida state courts. Certainly, the cost, anxiety, or inconvenience of defending a single criminal proceeding does not amount to the irreparable injury required by *Younger*. *Younger*, supra, 401 U.S. at 46 [91 S.Ct. at 751] * * *; *Douglas v. City of Jeannette*, 1943, 319 U.S. 157, 164 [63 S.Ct. 877, 881, 87 L.Ed. 1324] * * *. Petitioner has also not shown that the state officials responsible for the prosecution are guilty of 'bad faith' or 'harassment' of petitioner. Nor has petitioner shown any other 'extraordinary circumstances' which would justify federal court inter-

ference [in] a state pending criminal trial in this case."

This Court concludes that Rowe has demonstrated extraordinary circumstances and irreparable injury to himself and to his family.[8] It is the further opinion of this Court that the bad faith exhibited by all of the State court witnesses invests in the State court prosecution the bad faith, harassment, or extraordinary circumstances which justify federal court interference in a case of this sort. This Court has for too long delayed final ruling in this case necessary to vindicate Rowe's position and allow him to seek employment denied him because of pendency in this case. That delay was based upon a recognition of the limitations placed on federal interference in State court prosecution by the Supreme Court in *Younger v. Harris*, supra, and the many

---

**8.** There are, in the opinion of this Court, a number of other "extraordinary circumstances" which could be considered as reasons for enjoining this particular prosecution.

1. The Fifth Amendment protection from self-incrimination has been construed to involve certain tests as follows: "Did the governmental conduct complained of 'bring about' a confession not freely self-determined." *Shotwell Mfg. Co. v. United States*, 371 U.S. 341, at 348, 83 S.Ct. 448, at 453, 9 L.Ed.2d 357. The Court in *United States v. Weiss*, 599 F.2d 730, 738, phrased the test as follows: "The appropriate analysis is * * * whether there was a promise held out to which the government, as a matter of fair conduct, might be bound." The basic purpose of a grant of immunity is to permit the compulsion of testimony which otherwise would be privileged by the Fifth Amendment. *United States v. Tramunti*, 500 F.2d 1334 (2nd Cir.), cert. den. 419 U.S. 1079, 95 S.Ct. 667, 42 L.Ed.2d 673. The United States Court of Appeals for the Fifth Circuit in *United States v. Robertson*, 582 F.2d 1356, at 1366, in considering the closely related question of the admissibility in evidence of a confession made to enforcement agents in the course of a plea negotiation, established the following two-step analysis: First, whether the accused exhibited an actual subjective expectation to negotiate a plea at the time of the discussion, and, second, whether the accused's expectation was reasonable under the objective circumstances. Under this test and paraphrasing, it is clear that Rowe exhibited an actual subjective expectation to be immune from prosecution at the time he gave his information to Lowndes County officials, as well as to the FBI and that Rowe's expectation was reasonable under the objective circumstances then in existence. Only through Rowe's information could the identity of the murderers be discovered, and he was a federal government agent employed by the FBI when he rode with the alleged murderers on the fateful night in question. He was admittedly given permanent immunity if such were possible by Joe Breck Gantt—the head of the prosecution team—even if the Alabama Attorney General was somewhat equivocal in limiting immunity. As an agent, Rowe had no criminal intent and had every reason to believe that his lack of criminal intent (as well as his immunity) would shield him from any prosecution once his position was made known to the prosecution in spite of the unfortunate position in which he found himself on the night of the murder.

2. Denial of immunity from prosecution to persons in situations such as those herein set out tends to chill the right of freedom of speech. Knowledgeable witnesses should be encouraged to report crime even where they are involved therein. Prosecution of persons who, because of unfortuitous circumstances are necessarily associated with the perpetrators of crime, would discourage those persons from testifying thereon.

3. Where, as here, it is clearly demonstrated that relevant and competent evidence and witnesses for the defense have been made unavailable by a delay or other acts by the prosecution and where such evidence or witness would be material to the defense in the trial of a criminal prosecution, the interest of the public in, not only affording a fair trial but also, appearing to afford fair treatment to all, would require restraint of the prosecution.

4. This Court's jurisdiction to protect its witnesses will be curtailed if Rowe may not be protected against this vindictive prosecution. See, 28 U.S.C. § 2283.

cases similar thereto and by the Congress in the Anti–Injunction Act and by the fact that the federal judiciary has rarely recognized or defined the bad faith, harassment or extraordinary circumstances necessary to invoke an exception to the *Younger* doctrine or the protection of federal court jurisdiction excepted from the Anti–Injunction Act. This Court has now firmly concluded, however, that, while those terms cannot be specifically defined by law but must rest upon the facts of each case, the facts of this case justify imposition of those exceptions.

If the word of a prosecutor is worth anything–if the right of an informant to protection is worth anything–if this invaluable source of information is to be left open to law enforcement, Rowe and those following in his footsteps must know that they will be protected, and Rowe must be protected now. Because of work done for the Government and the vengeance of those whose prosecution rested solely on information furnished by him, Rowe has lost his job, has lost his secret identity, and he may lose his liberty. The failure of State and federal prosecutors to perfect statutory immunity should not provide an avenue of revenge against the prosecutorial witness. The word of the Government given in good faith and for rightful purpose cannot be obliterated for want of proper form. The failure of the Government to specifically follow the provisions of 18 U.S.C. §§ 6002, *et seq.*, under the circumstances of this case must be of no consequence.

The use of immunized testimony as an investigative lead against Rowe, the delay in prosecution causing substantial prejudice to Rowe's rights to a fair trial, and the intentional delay by hostile witnesses to gain a tactical advantage each violated the rights of Rowe to due process of law. Accordingly, this Court will grant a permanent injunction against the prosecution of the indictment pending in Lowndes County against Gary Thomas Rowe. That injunction will be addressed against the present Defendants in this case who are within this Court's jurisdiction and their successors in office.